# IN THE DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. JANE DOE, Individually, and as Mother and Next Friend of J.D. and A.D., Minors, and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br>     v.<br><br>1   PEDIATRIC DENTAL GROUP, LLC;<br>2.  PEDIATRIC DENTAL GROUP II, LLC, D/B/A PEDIATRIC DENTAL GROUP AND ADVENTURE VISION;<br>3.  HERO VISION OF UTICA, PLLC D/B/A ADVENTURE DENTAL & VISION<br>4.  HERO DVO, LLC D/B/A HERO PRACTICE SERVICES,<br><br>           Defendants. | No. 4:24-CV-00177-MTS |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS WITH CORRECTED CAPTION

I.   INTRODUCTION ................................................................................................................. 1

II.  NATURE AND STATE OF PROCEEDING............................................................................ 2

III.  STANDARD FOR DISMISSAL ........................................................................................ 2

IV.  ARGUMENT AND AUTHORITY ...................................................................................... 3

    A.  Plaintiff Fails to State a Claim for Negligence................................................................ 3

    B.  Plaintiff Fails to State a Claim for Negligence *Per Se*....................................................... 11

    C.  Plaintiff Fails to State a Claim for Invasion of Privacy. ...................................................... 11

    D.  Plaintiff Fails to State a Claim for Breach of Implied Contract.......................................... 14

    E.  Plaintiff Fails to State a Claim for Unjust Enrichment. ...................................................... 18

    F.  Plaintiff Fails to State a Claim for Breach of Fiduciary Duty............................................ 19

    G.  Plaintiff Fails to State a Claim for Violation of OCPA. ...................................................... 21

V.  CONCLUSION.................................................................................................................. 23

**Cases**

*Allen v. Novant Health, Inc.*, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) ............................. 12

*Anderson v. Blake*, 2005 WL 2716302 (W.D. Okla. Oct. 21, 2005) ............................................. 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................... 3

*Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal 2019) ............................................... 10

*Brush v. Miami Beach Healthcare Grp., Ltd.*, 238 F. Supp. 3d 1359 (S.D. Fla. 2017)............ 16, 17

*Capps v. Bullion Exch., LLC*, 2019 WL 4918682 (N.D. Okla. July 9, 2019)........................ 15, 16

*Corona v. Sony Pictures Entm't, Inc.*, 2015 WL 3916744 (C.D. Cal. June 15, 2015) ................ 10

*Delbrel v. Doenges Bros. Ford*, 913 P.2d 1318 (Okla. 1996) ......................................................... 4

*Dixon v. Bhuiyan*, 2000 OK 56, 10 P.3d 888.............................................................................. 14

*Doe v. Amgen, Inc.*, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024)................................................. 6

*Doe v. Davita Inc.*, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) ................................................. 6

*Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir. 2003) ...................................................... 12

*Dyer v. N.W. Airlines Corps.*, 334 F. Supp. 2d 1196 (D. N.D. 2004).................................... 15, 17

*E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1280 (10th Cir. 2023)...................................... 3

*First Nat'l Bank and Trust Co. of Vinita v. Kissee*, 959 P.2d 502 (Okla. 1993) ........................... 20

*Florafax Int'l, Inc. v. GTE Mkt. Res., Inc.*, 933 P.2d 282 (Okla. 1997) ...................................... 17

*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996) ........................................................ 3

*Gilmore v. Enogex, Inc.*, 878 P.2d 360 (Okla. 1994) ............................................................. 12, 13

*Gokool v. Okla. City Univ.*, 2016 WL 10520949 (W.D. Okla. Dec. 26, 2016)............................ 16

*Gokool v. Okla. City Univ.*, 716 F. App'x 815 (10th Cir. 2017)................................................. 16

*Graves v. Johnson*, 2015 OK Civ App. 81, 359 P.3d 1151 ......................................................... 19

*Hart v. TWC Product & Tech. LLC*, 526 F. Supp. 3d 592 (N.D. Cal. 2021)............................... 10

*Hayes v. Eateries, Inc.*, 905 P.2d 778 (Okla. 1995)........................................................... 14, 15, 17

*Hazel v. Prudential Fin., Inc.*, 2023 WL3933073 (N.D. Cal. June 9, 2023) .............................. 10

*Horton v. Hamilton*, 2015 OK 6, 345 P.3d 357 ...................................................................... 20

*Howard v. Zimmer*, 2013 OK 17, 299 P.3d 463 ...................................................................... 11

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742

   (D. N.J. Dec. 16, 2021) ........................................................................................................ 15

*In re Banner Health Data Breach Litig.*, 2017 WL 6763548 (D. Ariz. Dec. 20, 2017) ............... 15

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022) .................................. 9

*In re Nw. Airlines Privacy Litig.*, 2004 WL 1278459 (D. Minn. June 6, 2004) .......................... 17

*In re Zappos.com, Inc.*, 2013 WL 4830497 (D. Nev. Sept. 9, 2013)............................................ 17

*John v. St. Francis Hosp., Inc.*, 405 P.3d 681 (Okla. 2017) ......................................................... 4

*Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012) ........................................................ 3

*Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023)....................................... 12

*Lee v. Calhoun*, 948 F.2d 1162 (10th Cir. 1991).......................................................................... 12

*Lockett v. Webco Indus., Inc.*, 2022 WL 1184040 (10th Cir. Apr. 21, 2022)............................... 12

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................... 6

*Lowery v. Echostar Satellite Corp.*, 2007 OK 38, 160 P.3d 959................................................... 4, 5

*McGehee v. Forest Oil Corp.*, 908 F.3d 619 (10th Cir. 2018)................................................. 4, 5, 8

*Morgan v. State Farm Mut. Auto. Ins. Co.*, 2021 OK 27, 488 P.3d 743 ....................................... 14

*Moses-El v. City & Cnty. of Denver*, 2022 WL 1741944 (10th Cir. May 31, 2022)...................... 3

*Murphy v. Spring*, 2013 WL 5172951 (N.D. Okla. Sept. 12, 2013)............................................. 12

*Nicholson v. Tacker*, 512 P.2d 156 (Okla. 1973)........................................................................... 4

*Okla. Dep't of Sec. ex rel. Faught v. Blair*, 2010 OK 16, 231 P.3d 645 ...................................... 18

*Orthman v. Premiere Pediatrics, PLLC,* 2024 OK Civ App 7, 545 P.3d 124 ......................... passim

*Patterson v. Beall*, 2000 OK 92, 19 P.3d 839............................................................. 11, 21

*Peppers Gasoline Co. v. Weber*, 98 P.2d 1087 (Okla. 1940) ........................................ 10

*Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152 (10th Cir. 2017) ......................... 2

*Redwine Res., Inc. v. Predator Techs., L.L.C.*, 2007 OK Civ App. 109, 171 P.3d 330 ........... 14

*Saeedy v. Microsoft Corp.*, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023)............................. 13

*Tibbetts v. Sight 'n Sound Appliance Ctrs., Inc.*, 2003 OK 72, 77 P.3d 1042 .............................. 22

*Walker v. Builddirect.com Techs. Inc.*, 2015 OK 30, 349 P.3d 549 .................................................. 16

*Weddle v. WakeMed Health & Hospitals*, 2023 WL 8369786 (N.C. Super. Dec. 4, 2023) ......... 12

*Wilkersen v. Shineski*, 606 F.3d 1256 (10th Cir. 2010) ................................................... 11

*Williams v. Google, LLC*, 2021 WL 3603769 (E.D. Tex. Aug. 13, 2021) .................................... 6

*Williams v. Google, LLC*, 2021 WL 3612300  (E.D. Tex. July 16, 2021)......................... 6, 20, 23

**Statutes**

15 Okla. Stat. § 2 ................................................................................................... 14

15 Okla. Stat. § 754 ............................................................................................... 22

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 3

Defendants Pediatric Dental Group, LLC, Pediatric Dental Group II, LLC d/b/a Pediatric Dental Group and Adventure Vision, Hero Vision of Utica, PLLC d/b/a Adventure Dental & Vision (collectively, the "PDG Defendants"), and Hero DVO, LLC d/b/a Hero Practice Services ("Hero") (all together, the "Defendants") file this Motion to Dismiss all claims Plaintiff Jane Doe ("Plaintiff" or "Doe") asserted against Defendants in her Class Action Petition ("Petition").

## I.    INTRODUCTION

This case is part of a nationwide trend of putative class action lawsuits attacking healthcare providers for the alleged use of third-party analytics technologies on public websites. At base, Plaintiff alleges that Defendants embedded certain third-party source code from Meta, Google, and other third parties ("source code") on their public websites. Petition at ¶¶ 1–2, 6, 8, 74–76, 104–05. Plaintiff alleges that this source code causes information—characterized in conclusory fashion as "Personally Identifying Information" ("PII") and/or "Protected Health Information" ("PHI")— to be transmitted to third parties when users visit public websites. *Id.* at ¶¶ 1–2, 8–11, 17–19, 54– 55, 58, 73, 89f. This alleged PII/PHI is not tied to a person's name; instead, it is Internet metadata related to the proper functioning of websites, including the transmission of Universal Resource Locators ("URLs"), IP addresses, web browser configuration data, and cookie identifiers. *Id.* at ¶¶ 53–54, 58–59.

With this technological backdrop in place, Plaintiff generically alleges that Defendants shared her and her minor children's data with third parties without her consent. *Id.* at ¶¶ 100-04. Plaintiff asserts the following claims against Defendants: (1) negligence, (2) negligence *per se*, (3) invasion of privacy, (4) breach of implied contract, (5) unjust enrichment, (6) breach of fiduciary duty, and (7) violation of the Oklahoma Consumer Protection Act ("OCPA"). For the reasons set forth below, this Court should grant Defendants' motion to dismiss and dismiss

1

Plaintiff's Petition with prejudice for failure to state a claim.

## II. NATURE AND STATE OF PROCEEDING

On September 12, 2023, Plaintiff filed her first putative class action complaint against Hero Services, LLC d/b/a Kids Dental Vision Care and Hero Practice Services in the District Court of Tulsa County, State of Oklahoma, Case No. CJ-2023-03255.[1] Hero timely removed the action to the Northern District of Oklahoma on October 6, 2023, pursuant to the Class Action Fairness Act ("CAFA").[2] In their notice of removal and corporate disclosure statement, defendants notified Doe that Hero is the proper defendant in the action and that Hero is a Delaware limited liability company with a principal place of business in Colorado. Doe voluntarily dismissed the first putative class action complaint on October 24, 2023.

On January 31, 2024, Doe filed her second putative class action complaint (the "Petition") in the District Court of Tulsa County, State of Oklahoma, Case No. CJ-2024-00360. Petition at ¶¶ 29–34, 44. This time, Plaintiff sued the PDG Defendants, excluding Hero despite having notice that Hero is the proper defendant in this action. Hero moved to intervene in the Oklahoma state court action, and the Tulsa County District Court granted Hero's motion on April 9, 2024. Hero filed a notice of removal on April 19, 2024, removing the action to this Court pursuant to CAFA.

## III. STANDARD FOR DISMISSAL

"In diversity cases, the *Erie* doctrine instructs that federal courts must apply state substantive law and federal procedural law." *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S.

---

[1] Neither Hero Services, LLC nor Kids Dental Vision Care are actual entities. The proper defendant in the prior action was Hero DVO, LLC d/b/a Hero Practice Services.

[2] The case number for this action was 4:23-CV-00432-MTS.

415, 427 (1996)). Because Plaintiff asserts Oklahoma common law and statutory claims, Oklahoma law guides the substantive analysis while federal procedure governs the standard for dismissal.

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Moses-El v. City & Cnty. of Denver*, 2022 WL 1741944, at *7 (10th Cir. May 31, 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Moses-El*, 2022 WL 1741944, at *7 (quoting *Iqbal*, 556 U.S. at 678). To succeed, a plaintiff must plead facts that show more than a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 678. Facts that are merely "consistent with a defendant's liability" are insufficient. *Id.*

"[I]n examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether the remaining allegations plausibly suggest the defendant is liable." *E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1280 (10th Cir. 2023) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *E.W.*, 86 F.4th at 1280 (quoting *Ashcroft*, 556 U.S. at 678).

## IV. ARGUMENT AND AUTHORITY

### A. Plaintiff Fails to State a Claim for Negligence.

To establish a negligence claim under Oklahoma law, a "plaintiff must show duty,

breach, and causation—(1) a duty owed by defendant to protect plaintiff from injury, (2) defendant's failure to properly exercise or perform that duty, and (3) defendant's failure to exercise his duty of care proximately caused plaintiff's injury." *McGehee v. Forest Oil Corp.*, 908 F.3d 619, 624 (10th Cir. 2018) (citing *John v. St. Francis Hosp., Inc.*, 405 P.3d 681, 691 (Okla. 2017)). Here, Plaintiff fails to plead sufficient facts that plausibly suggest (i) Defendants owed a duty to Plaintiff, (ii) Defendants breached that duty, or (iii) Plaintiff suffered damages.

> i. **Defendants Do Not Owe a Duty of Care to Protect Plaintiff's Internet Metadata.**

"[I]f the defendant did not owe a duty of care to the plaintiff, there can be no liability for the negligence as matter of law." *McGehee*, 908 F.3d at 626 (quoting *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 12, 160 P.3d 959). "Whether a duty exists is a threshold legal question for the court." *Id.* at 624 (citing *Delbrel v. Doenges Bros. Ford*, 913 P.2d 1318, 1320 (Okla. 1996)). To determine whether a duty exists, courts analyze "policy factors that lead the law to say a particular plaintiff is entitled to protection." *Lowery*, 160 P.3d at 964. The primary focus is whether the defendant's conduct unreasonably endangered the plaintiff under the circumstances. *See McGehee*, 908 F.3d at 627; *Lowery*, 160 P.3d at 965 ("The focus of our inquiry is not whether the risk of harm was foreseeable but whether [the defendant's] conduct unreasonably endangered [the plaintiff]."); *Nicholson v. Tacker*, 512 P.2d 156, 159–60 (Okla. 1973) (stating that defendant who creates a danger is not per se negligent, especially when the danger is obvious and plaintiff was aware of it).

Accordingly, a duty of care does not arise unless the defendant creates a foreseeable risk of harm that is unreasonably dangerous under the circumstances. In *Lowery*, the plaintiff fell from her roof while attempting to fix her satellite dish. 160 P.3d at 962. The dish company had refused to make some minor repairs and instead instructed the plaintiff how to do the repairs

4

herself by climbing onto the roof to reach the dish. *Id.* The plaintiff sued the company, arguing that the defendant assumed a duty of care by refusing to repair the dish and providing instructions to her on how to complete the repair herself. *Id.* at 965. The Oklahoma Supreme Court disagreed with the plaintiff's argument, explaining that although the defendant could foresee a risk of harm in instructing the plaintiff to climb onto the roof, it nonetheless did not "unreasonably endanger[] [the plaintiff] with respect to the obvious risk involved in climbing onto a rooftop." *Id.* Thus, the court held that the defendant did not owe the plaintiff a duty of care. *Id.*

In *McGehee*, two drilling companies leased a drilling device and later returned it after use. 908 F.3d at 620. While workers were removing mud and debris from the device to clean it, the lithium battery in the drilling device exploded and injured the workers. *Id.* at 620–21. The workers sued the drilling companies for negligence. *Id.* at 621. The Tenth Circuit found that "the defendants did not engage in conduct that created an unreasonably dangerous foreseeable risk to [the workers]" because "it was common for debris to fall into the drilling device during its use in the field." *Id.* at 628. The court explained that "it was [the plaintiffs'] job to remove debris, including bolts, and disassemble the device in the normal course," noting that "to conclude [the defendants] should have known their conduct posed an unreasonably dangerous risk to [the plaintiffs] would be 'beyond reason and good sense.'" *Id.* (quoting *Rose*, 631 P.2d at 757).

Here, Plaintiff fails to plead sufficient facts to show that Defendants owed her a duty to keep her public browsing information confidential. Plaintiff fails to show that Defendants engaged in conduct that creates an unreasonable dangerous foreseeable risk. Multiple courts have rejected "duty of care" allegations that are virtually identical to the ones in Plaintiff's

Petition. *See B.K. v. Eisenhower Med. Ctr.*, 2024 WL 878100, at *7 (C.D. Cal. Feb. 29, 2024) (concluding that in an invasion of privacy analysis, the use of a website "for routine medical searches and inquiries" does not establish any medical information was disclosed and does not constitute an "egregious breach of social norms") (citing *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012)); *Doe v. Amgen, Inc.*, 2024 WL 575248, at *2 (C.D. Cal. Jan. 29, 2024) ("It is not enough for Plaintiff to plead conclusory allegations that Defendant[s] violated her privacy without offering any facts that her information was collected and then improperly disclosed to unauthorized third parties."); *Doe v. Davita Inc.*, 2024 WL 1772854, at *2 (S.D. Cal. Apr. 24, 2024) (dismissing generic, conclusory allegations that plaintiff's personal, confidential and sensitive medical information; medical treatment; and payment information were disclosed to unauthorized third parties). This is because website providers regularly use third-party cookies and source code in the normal course to track and monitor website activity and metadata so they can understand how users interact with their websites and improve their experience.

Indeed, courts have recognized that "[u]sing an Internet search engine is now a commonplace facet of everyday living. One aspect of using such technology is agreeing that certain data, including browsing history, be collected." *Williams v. Google, LLC*, 2021 WL 3612300, at *6 (E.D. Tex. July 16, 2021), *report and recommendation adopted*, 2021 WL 3603769 (E.D. Tex. Aug. 13, 2021). There is no authority to suggest that Oklahoma law imposes a duty on public-website providers to safeguard users' public browsing information or metadata. Nor is it reasonable to suggest that public website browsing activity is confidential absent an express promise to the contrary. Plaintiff does not allege that Defendants promised to keep users' browsing information or metadata confidential here.

Moreover, despite providing excerpts from Defendants' public website, Plaintiff conveniently fails to include or mention the cookie banner that is plainly visible on Defendants' website. [3] *Compare* Petition *with* Exhibit 1 at 5. This cookie banner expressly states that Defendants' public website utilize cookies, and that information is used with advertising and analytic partners. Exhibit 1. Defendants' cookie banner allows for a user to click on additional information that explains what a "cookie" is and how to withdraw a person's consent to such use at any time. Furthermore, Defendants' cookie banner, by default, does not provide a user's information for marketing purposes. Exhibit 1 at 8-9. An individual user must opt-in to have such information collected. *Id.* Despite Plaintiff's generic allegations that she did not consent to Defendants' use of "tracking technologies," Petition at ¶ 8, she cannot circumvent the fact that Defendants alerted Plaintiff (and other users of their public website) as to their use of such third-party technologies on their public website. Exhibit 1. Like the defendants in *Lowery* who did not unreasonably endanger the plaintiff by instructing her to climb onto the roof because the risk of harm was obvious, Defendants here did not unreasonably endanger Plaintiff by collecting Plaintiff's website activity and metadata because the risk of harm, if any, was obvious to a reasonable person.

Public policy also militates against finding a duty of care in these circumstances.

---

[3] Plaintiff cites to one website for Defendants, https://kidsdentalvisioncare.com. Petition ¶¶ 38–47. "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Ass'd Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). "When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and [the] rationale for conversion to summary judgment dissipates." *GFF Corp.*, 130 F.3d at 1385. Here, Plaintiff repeatedly refers to Defendants' website and the website therefore incorporated by reference. *Id.* Authenticated screenshots of the website are attached with the Maddalone Declaration as Exhibit 1 and can also be viewed at https://kidsdentalvisioncare.com.

Imposing a duty on Defendants to safeguard their public website for every visitor, whether a patient or non-patient, would expose every healthcare adjacent website provider to a negligence claim every time an Oklahoma citizen visits a public website. Plaintiff's Petition ignores the practical reality that Defendants have no method of distinguishing patients from mere users of its public website. *See* Steven Alexander, *Identifying a Person Using an IP Address*, HGEXPERTS.COM, https://www.hgexperts.com/expert-witness-articles/identifying-a-person-using-an-ip-address-52504#:~:text=On%20a%20public%20wireless%20network,a%20 specific%20point%20in%20time. (last visited April 22, 2024) ("[A]n IP address identifies either an individual device, or a group of devices, at a specific point in time."). Because IP addresses, at most, can identify a device, but not an individual user or the user's address, Plaintiff's status as a patient is irrelevant for the complained-of conduct on Defendants' public website. Defendants have no duty to refrain from disclosing mere user's public website activity data. Concluding otherwise would be "beyond reason and good sense." *McGehee*, 908 F.3d at 628.

### ii. Defendants Did Not Breach Any Duty.

Even if Defendants owed a duty to Plaintiff, they have not breached this duty. Plaintiff's generalized allegations conflate Defendants' duty to protect a patient's PHI/PII with non-patient public browsing information, which Defendants do not have a duty to protect. To the extent Plaintiff alleges Defendants breached their duty as healthcare providers to keep patient information confidential, Plaintiff fails to allege any *facts* to plausibly show that Defendants disclosed *any* medical information or confidential communications with healthcare providers or third parties. Petition at ¶¶ 100–05.

Plaintiff's generalized allegations of the disclosure of her children's "identities," "statuses as patients," and "seeking medical treatment" on their behalf, Petition at ¶ 104, are not considered

PHI as a matter of law. The Health Insurance Portability and Accountability Act ("HIPAA") defines PHI as "individually identifiable" information "created or received by a health care provider" that "relates to the past, present, or future physical or mental health condition of an individual: or "the provision of health care to an individual." 45 C.F.R. § 160.103. Thus, the identities of Plaintiff's children alone do not constitute PHI; there must be additional information tying their identities to a medical condition or the provision of health care.

Plaintiff attempts to fill this gap by alleging that Defendants disclosed her children's patient statuses, yet this bald assertion is unavailing. While a court has found that a patient's status can amount to PHI, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022), the plaintiffs in that case alleged that defendants "intercept[ed] data relating to **patient portal logins and logouts** alongside identifiers for each patient." *In re Meta Pixel*, 647 F. Supp. 3d at 791 (emphasis added). Here, Defendants do not operate or maintain a patient portal, Olson Decl. at ¶ 11, and Plaintiff alleges no facts to reasonably infer that her children's patient statuses could have been recorded, much less disclosed to third parties, by visiting Defendants' website.

Contrary to Plaintiff's legal conclusions, the content Plaintiff viewed, buttons she clicked, and the "activities *relating to* scheduling appointments"[4] and "seeking medical treatment" merely constitute public website browsing information and metadata that apply equally to patients and users of Defendants' public website. Plaintiff's mischaracterizations cannot rectify the simple truth that she alleges no facts to plausibly suggest that her or her children were identified as *patients* or relate to a *specific* health condition or provision of

---

[4] Defendants note that Plaintiff did not allege that Defendants disclosed specific appointment information, only activities "relating to" scheduling appointments, such as clicking on a button to schedule an appointment. Pet. at ¶ 89(b)–(c). Such generalized assertions do not amount to "factual allegations." Iqbal, 556 U.S. at 678.

healthcare. Because non-patients can just as easily browse Defendants' website, view content, click buttons, and engage in "activities relating to scheduling appointments," and Defendants, cannot differentiate between mere users and patients based on their website activity, Plaintiff's allegations, even if true, fail to plausibly allege that this information constitutes PHI.

### iii. Defendants' Alleged Breach Caused no Damages.

Plaintiff's allegations of future harm are also insufficient as a matter of law. Petition at ¶ 182. Several courts have rejected the idea that Plaintiff's public website browsing data has value that can be equated to actual damages. *See, e.g.*, *Corona v. Sony Pictures Entm't, Inc.*, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015) (rejecting claim that "an individual's personal identifying information has any compensable value in the economy at large."); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal 2019) ("[P]laintiff] . . . has not shown how this information has economic value to him. That the information has external value but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property."); *Hazel v. Prudential Fin., Inc.*, 2023 WL3933073, at *6 (N.D. Cal. June 9, 2023) ("[J]ust because Plaintiffs' data has value in the abstract, and because ActiveProspect might have made money from it, does not mean that Plaintiffs have 'lost money or property' as a result."); *Hart v. TWC Product & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021) (same).

Furthermore, Plaintiff's generalized allegations of future economic damages were rejected by the Oklahoma Court of Appeals earlier this year. *Orthman v. Premiere Pediatrics, PLLC,* 2024 OK Civ App 7,¶ 19, 545 P.3d 124, 133. "A plaintiff must show the future effect of the injury or loss 'with reasonable certainty,' not mere conjecture or probability." *Orthman*, 2024 OK Civ. App. 7, ¶ 20 (quoting *Peppers Gasoline Co. v. Weber*, 98 P.2d 1087, 1091 (Okla. 1940)). Without a cognizable claim for future economic losses, Plaintiff is "unable to legally

justify [her] mitigation efforts as recoverable damages. For the purposes of determining damages in a negligence action, a party's mitigation of expenses is only relevant where the matter being mitigated was recoverable in the first place." *Id.* at ¶ 22. Because Plaintiff cannot justify her mitigation efforts "as a 'concrete injury' where there is no imminent threat of harm," *id.*, she cannot plausibly establish that Defendants' alleged breach caused her damages.

### B. Plaintiff Fails to State a Claim for Negligence *Per Se.*

Plaintiff's negligence *per se* claim must be dismissed with prejudice. Plaintiff identifies the Federal Trade Commission Act ("FTC Act") and the Health Insurance Portability and Accountability Act ("HIPAA") as the statutory bases for her negligence *per se* claim. Petition at ¶ 185. However, the Oklahoma Court of Appeals plainly stated that neither the FTC Act nor HIPAA can establish a negligence *per se* claim. *Orthman*, 2024 OK Civ. App. 7, ¶¶ 24-25 (concluding "there are no private causes of action under HIPAA and the FTC Act.") Plaintiff cannot circumvent this authority. *Id.*

Any argument that the *Orthman* court did not consider *Howard v. Zimmer, Inc.*, is without merit. 2013 OK 17, 299 P.3d 463. While the *Howard* court analyzed the Federal Food Drug and Cosmetic Act, 2013 OK 17, ¶ 1, the *Orthman* court highlighted how the Oklahoma Supreme Court had already concluded that the FTC Act does not provide a private right of action under Oklahoma law and that the Tenth Circuit does not provide a private right of action under HIPAA. *Orthman*, 2024 OK Civ. App. 7, ¶ 25 (citing *Patterson v. Beall*, 2000 OK 92, ¶ 29, 19 P.3d 839; *Wilkersen v. Shineski*, 606 F.3d 1256, 1267 (10th Cir. 2010). Plaintiff cannot circumvent this authority, and therefore her negligence *per se* claim should be dismissed with prejudice.

### C. Plaintiff Fails to State a Claim for Invasion of Privacy.

To establish a claim for invasion of privacy under Oklahoma law, a plaintiff must establish (1) "a nonconsensual intrusion" which (2) "was highly offensive to a reasonable person." *Lockett v. Webco Indus., Inc.*, 2022 WL 1184040, at *3 (10th Cir. Apr. 21, 2022) (quoting *Gilmore v. Enogex, Inc.*, 878 P.2d 360, 366 (Okla. 1994)); *Murphy v. Spring*, 2013 WL 5172951, at *10 (N.D. Okla. Sept. 12, 2013). "[A]n intrusion occurs when an actor believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *Id.* (quoting *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1221 (10th Cir. 2003)) (internal quotation marks omitted).

An intrusion does not occur where, as here, Plaintiff alleges she voluntarily provided information that Defendants later disclosed to third parties. Petition at ¶¶ 100-03 ("Plaintiff provided her, J.D.'s and A.D.'s Private Information to Defendants . . . ."). When faced with virtually identical allegations and invasion of privacy claims, several courts have dismissed such claims because the plaintiffs had voluntarily provided such information to the defendant. *See Allen v. Novant Health, Inc.*, 2023 WL 5486240, at *2 (M.D.N.C. Aug. 24, 2023); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 944 (N.D. Ill. 2023) ("*Kurowski I*") (dismissing invasion of privacy claim for unauthorized disclosure of personal medical information because plaintiffs provided the information voluntarily to defendant); *Weddle v. WakeMed Health & Hospitals*, 2023 WL 8369786, at *4 (N.C. Super. Dec. 4, 2023) (concluding that voluntarily sharing sensitive information does not amount to an invasion of privacy claim because even if the disclosure were true, "unauthorized *disclosure* of confidential information to a third party is not an *intrusion* into Plaintiffs' private affairs."). This line of reasoning is consistent with Tenth Circuit authority. *Lee v. Calhoun*, 948 F.2d 1162, 1165 (10th Cir. 1991) ("plaintiffs acknowledge[d] in the complaint that they voluntarily provided their information directly to [the defendant]," and

thus had not alleged an intrusion) (providing that publication of materials acquired from third parties is insufficient for intrusion); *Anderson v. Blake*, 2005 WL 2716302, at *5 (W.D. Okla. Oct. 21, 2005) (dismissing invasion of privacy claim because plaintiff did not allege that defendants improperly received the disclosed information). Because Plaintiff admits that she *voluntarily* used the Defendants' public website to browse educational content, etc., she cannot establish the first element for her invasion of privacy claim. Petition at ¶¶ 7, 47, 100-03.

Plaintiff's invasion of privacy claim further fails because the use of third-party tracking technologies on a public website is not "highly offensive to a reasonable person." In analyzing the degree of offensiveness, courts balance privacy interests against legitimate policy and business interests. *See Gilmore*, 878 P.2d at 366–67 (concluding there was no invasion of privacy when the plaintiff's "privacy concerns are balanced against [defendant's] legitimate interest in providing a drug-free workplace"). In this case, Defendants' alleged conduct is not highly offensive to a reasonable person because a person does not have a reasonable expectation of privacy on a public website. *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4–5 (W.D. Wash. Dec. 21, 2023) (dismissing invasion of privacy claims and concluding there is no expectation of privacy in a person's public browsing data; rejecting the argument that Microsoft intruded into their private affairs when Microsoft "intercepted and collected 'users' internet browsing activities, internet searches, and online shopping behavior,' . . . 'keyword search terms, URLs, and unique user identifiers and cookies[.]'"). Nor do "routine medical searches and inquiries" rise to "highly offensive" conduct. *See Eisenhower*, 2024 WL 878100, at *7 (dismissing invasion of privacy claim where alleged disclosure of "routine medical searches and inquiries" does not amount to "highly offensive" personal medical information). As Plaintiff's allegations mirror the "routine medical searches and inquiries," Petition at ¶¶ 100-03, such

allegations, even if true, fail to establish highly offensive conduct. To find otherwise would expose every website provider to an invasion of privacy claim every time an Oklahoma citizen visits a public website.

Accordingly, Plaintiff's invasion of privacy claim should be dismissed.

**D.      Plaintiff Fails to State a Claim for Breach of Implied Contract.**

Like her invasion of privacy claim, Plaintiff's breach of implied contract claim fails to identify sufficient facts to plausibly allege the essential elements to support her claim. Under Oklahoma law, a party shows a contract is formed when the party alleges "(1) parties capable of contracting; (2) consent; (3) a lawful object; and (4) sufficient cause or consideration." *Redwine Res., Inc. v. Predator Techs., L.L.C.*, 2007 OK Civ App. 109, ¶ 15, 171 P.3d 330 (citing 15 Okla. Stat. § 2); *Morgan v. State Farm Mut. Auto. Ins. Co.*, 2021 OK 27, ¶ 21, 488 P.3d 743 (stating the elements for a contract are "(1) formation of a contract; (2) breach of the contract; and (3) damages as a result of that breach.")

In addition to the foregoing elements, when determining whether an implied contract exists, Oklahoma courts consider (a) the parties' acts, conduct and statements as a whole, (b) whether there was a meeting of the minds on the agreement's essential terms, (c) the parties' intent to enter into a contract upon defined terms, and (d) whether one of the parties has relied in good faith upon the alleged contract. *Dixon v. Bhuiyan*, 2000 OK 56, ¶ 10, 10 P.3d 888, 891. An implied contract "is deduced from disclosed circumstances as well as the parties' relations and its terms reflect the agreement which in fairness ought to have been made." *Dixon*, 2000 OK 56, ¶ 11. "[I]f the alleged promises are nothing more than vague assurances, as they are here, the issue can be decided as a matter of law." *Hayes v. Eateries, Inc.*, 905 P.2d 778, 783 (Okla. 1995). The promises that create an implied contract "must be definite." *Hayes*, 905 P.2d at 783.

"Only when the promises are definite and, thus, of the sort which may be reasonably or justifiably relied on . . . will a contract claim be viable, not when [a person] relies on only vague assurances that no reasonable person would justifiably rely upon." *Id.* Therefore, Oklahoma courts apply an objective standard of review when analyzing breach of implied contract claims "in the form of definite and specific promises." *Id.*

In this case, the "definite and specific promises" terms that constitute the implied-in-fact "agreement" are based on Defendants "Privacy Policy," "Notice of Privacy Practices," and "elsewhere." Petition at ¶ 206. These generic allegations conflate Defendants' federally mandated obligations to safeguard and protect confidential information as a condition of receiving medical treatment with a purported duty to protect a person's public browsing history. *Compare* Petition at ¶¶ 206–10 *with In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at \*20 (D. N.J. Dec. 16, 2021) ("Statements of Defendants' intent to follow federal law do not support an independent cause of action for breach of implied contract."); *Capps v. Bullion Exch., LLC*, 2019 WL 4918682, at \*3 (N.D. Okla. July 9, 2019) (concluding the "Privacy Policy" at issue was not an implied contract under the facts of the individual case); *see In re Banner Health Data Breach Litig.*, 2017 WL 6763548, at \*4 (D. Ariz. Dec. 20, 2017) (dismissing plaintiff's contract claim because the privacy policy could not "be read as a promise to do anything above and beyond what [wa]s already required by law," resulting in the alleged contract not being "supported by consideration"); *see also Dyer v. N.W. Airlines Corps.*, 334 F. Supp. 2d 1196, 1199–200 (D. N.D. 2004) ("[B]road statements of company policy . . . do not generally give rise to contract claims."). Not only does Plaintiff fail to rely on any document outside of Defendants' express intent to abide by federal law, she has not and cannot point to any "definite and specific promises" that Defendants made to establish

15

an implied contract when using Defendants' public, free-to-use website.

Aside from the lack of definite and specific terms, Plaintiff fails to plead *any* facts that establish a meeting of the minds as to the essential terms of this "agreement" between herself and Defendants. *See generally* Petition. "A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." *Walker v. Builddirect.com Techs. Inc.*, 2015 OK 30, ¶ 14, 349 P.3d 549. Plaintiff fails to allege that she relied upon, or even reviewed, Defendants' "Privacy Policy," "Notice of Privacy Practices," or "elsewhere" either before she utilized Defendants' website or any time thereafter. *Compare* Petition at ¶¶ 100-03 *with* ¶¶ 206-10. Plaintiff's claim fails on this basis alone. See *Capps*, 2019 WL 4918682, at *3 (rejecting implied contract theory because there was no evidence of plaintiff's reliance or review prior to purchase).

Plaintiff further fails to allege facts that show Defendants agreed to provide Plaintiff with data security services. *See generally* Petition. Privacy statements do not constitute express contracts and any reliance upon Defendants' website and privacy policies do not establish an implied contractual duty to provide such services. *Capps*, 2019 WL 4918682, at *2-3; *Gokool v. Okla. City Univ.*, 2016 WL 10520949, at *4 (W.D. Okla. Dec. 26, 2016) *aff'd*, 716 F. App'x 815, 818 (10th Cir. 2017); *see also Brush v. Miami Beach Healthcare Grp., Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) (finding Privacy Policy "provisions, despite Plaintiff's protestations otherwise, are not contractual in nature. Instead, these provisions inform patients of their rights under federal law—specifically [HIPAA]—and the duties imposed upon the Defendants by these statutory provisions. Because the Defendants are required by law to adhere to HIPAA without receiving any consideration from the Plaintiff or any other patient, these provisions *cannot create contractual obligations*.") (emphasis added). Thus, Defendants' HIPAA-required privacy

policies are merely a restatement of their federally imposed obligations, not an implied offer to provide data security services to mere users of its public website.

Plaintiffs' allegations concerning Defendants' "promises" are vague assertions that are neither definite nor defined as required under Oklahoma law. *Hayes*, 905 P.2d at 783. However, "unilateral statements of fact alleged as to the safety of customers' data do not create any contractual obligations." *In re Zappos.com, Inc.*, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013) (finding no implied contract to safeguard data in consumer transactions where "customers agreed to pay money for goods").[5]

Plaintiff also fails to plead any facts to show that she suffered damages because of the alleged breach. It is a basic principle of contract law that the purpose of contract damages is to "plac[e] the innocent party in the same position as if the contract had been fully performed." *Florafax Int'l, Inc. v. GTE Mkt. Res., Inc.*, 1997 OK 7, ¶ 26, 933 P.2d 282, 292. Yet nowhere in her 240-paragraph 53-page Petition does Plaintiff allege that she reasonably expected she would be compensated for the value of her personal information. *See generally* Petition; *Eisenhower*, 2024 WL 878100, at *7 ("Plaintiffs have not alleged that they, or any other Users, have been foreclosed from opportunities to capitalize on the value of their personal information."). Nor does she allege that Defendants' conduct foreclosed her from capitalizing on the value of her personal information. *Id.* Without these allegations, Plaintiff cannot show that she suffered any damages proximately caused by Defendants' alleged use of third-party tracking technology on their public website.

---

[5] *See also Brush v. Miami Beach Healthcare Grp., Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) (privacy notices are "not contractual in nature"); *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196, 1200 (D. N.D. 2004) ("[B]road statements of company policy do not generally give rise to contract claims."); *In re Nw. Airlines Privacy Litig.*, 2004 WL 1278459, at *5–6 (D. Minn. June 6, 2004) (finding no contract where plaintiffs alleged they relied on privacy policy on defendant's website).

Accordingly, Plaintiff's failure to allege (1) a meeting of the minds, (2) a sufficiently definite and defined "promise" by Defendants, or (3) facts establishing damages because of the breach each dooms her breach of implied contract claim, which must be dismissed as a matter of law.

### E.      Plaintiff Fails to State a Claim for Unjust Enrichment.

"Unjust enrichment is a 'condition which results from the failure of a party to make restitution in circumstances where not to do so is inequitable.'" *Orthman*, 2024 OK Civ App 7, ¶ 30 (citing *Okla. Dep't of Sec. ex rel. Faught v. Blair*, 2010 OK 16, ¶ 22, 231 P.3d 645, 658–59). To prevail on an unjust enrichment claim under Oklahoma law, a plaintiff must show "(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another." *Id.*

Plaintiff alleges that mere visitation to Defendants' public website "conferred a monetary benefit upon Defendants," Petition at ¶¶ 24, 218, but the Oklahoma Court of Appeals has rejected the notion that mere visitation to the website is sufficient. *Orthman*, 2024 OK Civ App 7, ¶ 31. The Oklahoma Court of Appeals reasoned that there was no unjust retention of any benefit of value and that customers pay for medical services, not data protection. *Id.* at ¶ 32. Although the *Orthman* court decided this claim in the data breach context, the court's analysis applies equally to Plaintiff's virtually identical theory and allegations. *Id*.

Even if the Oklahoma Court of Appeals had not addressed virtually identical allegations, courts reject vague unjust enrichment theories. *See Eisenhower*, 2024 WL 878100, at *9 (dismissing unjust enrichment claim because "Plaintiffs fail[ed] to plead facts showing that Defendant disclosed Plaintiffs['] information"). "Without specific allegations about the underlying information that was allegedly disclosed, it is unclear to the Court how, if at all, Defendant was unjustly enriched." *Id.* In this case, Plaintiffs' generic allegations fail to identify

the underlying information that was allegedly disclosed and requires dismissal. Petition at ¶¶ 100-03, 218-23.

Plaintiff's generic allegations further fail to explain how these "benefits" unjustly enriched Defendants. Plaintiff admits that she knowingly and voluntarily used Defendants' free-to-access public website to "research the clinic, to seek treatment, and to book appointments, on behalf of her children." Petition at ¶ 101. In accordance with their mission to expand care access for all children, Defendants provided Doe with free and unrestricted access to their website to browse educational content and provide a convenient method of booking appointments. *Id.* at ¶¶ 7, 47. Plaintiff has not and cannot explain how this exchange is unjust or inequitable. *Orthman*, 2024 WL OK Civ App 7, ¶¶ 30-32 (finding PII/PHI is not a benefit of value and defendant did not unjustly retain any benefit of value when it "accepts the benefits accompanying a plaintiff's data.").

### F.     Plaintiff Fails to State a Claim for Breach of Fiduciary Duty.

To prevail on a breach of fiduciary duty claim, a plaintiff must show "(1) the existence of a fiduciary relationship; (2) a breach of a fiduciary duty, and (3) the breach of a fiduciary duty was the direct cause of damages. *Orthman*, 2024 WL OK Civ App 7, ¶ 34. A fiduciary relationship exists where "there is confidence reposed on one side and resulting domination and influence on the other." *Lowrance v. Patton*, 710 P.2d 108, 111 (Okla. 1985). "[I]f a physician negligently discloses a patient's PPI/PHI through electronic or other means, the patient may maintain an action for damages in tort against the physician." *Orthman*, 2024 WL OK Civ App 7, ¶ 31. "In all cases, the determination of the existence of a fiduciary relationship depends upon the factual circumstances, including the relationship of the parties involved, to each other and to the disputed transaction." *Graves v. Johnson*, 2015 OK Civ App. 81, ¶ 22, 359 P.3d 1151, 1156 n.8

(quoting *First Nat'l Bank and Trust Co. of Vinita v. Kissee*, 959 P.2d 502, 510-11 (Okla. 1993)). A fiduciary relationship "exists when one person acquires influence over another such that the influenced allows the influencer to substitute his or her will for the influenced' s own." *Horton v. Hamilton*, 2015 OK 6, ¶ 21, 345 P.3d 357, 364.

In this case, Defendants did not owe Plaintiff a fiduciary relationship when she used Defendants' public website. Plaintiff conflates her use of Defendants' public website with her "communication" of "confidential patient information regarding J.D. and A.D." Petition at ¶ 101. Indeed, Plaintiff conflates how she interacted with Defendants' website and instead generically alleges that she visited all the Defendants' website. *Id.* at ¶ 100-03. Using the Internet "is now a commonplace facet of everyday living." *Williams*, 2021 WL 3612300, at *6. To impose a fiduciary duty when an individual user that may or may not be a patient visits a public, free-to-access website contravenes public policy and contradicts Oklahoma common law. A website provider of a public website does not maintain a fiduciary duty to individuals who access and use a public website. *Kissee*, 959 P.2d at 510-11.

In the alternative, to the extent Defendants had a fiduciary duty, Defendants have met that duty and Plaintiff alleges no facts to the contrary. Petition at ¶¶ 100-03. Plaintiff fails to allege any facts to suggest that Defendants somehow influenced her to allow Defendants to substitute their will for that of Plaintiff's. *Compare* Petition at ¶¶ 100-03 *with Horton*, 2015 OK 6, ¶ 21. Although the *Orthman* court concluded that a fiduciary duty claim can be asserted against a physician, Plaintiff's allegations concerning her breach of fiduciary duty claim are sufficiently distinguishable from the *Orthman* court's fiduciary duty analysis. *Orthman*, 2024 WL OK Civ App 7, ¶¶ 33-34. Notably, the *Orthman* court did not differentiate between a healthcare provider and a physician in its analysis. *Id*. This is because the *Orthman* court did not require such a

distinction as the underlying facts involved a cyberattack that allegedly involved the disclosure of electronic health records of individuals and actual fraud as a result of the cyberattack. *Id.* at ¶¶ 1-3. The presence of electronic health records (and their alleged disclosure) is more analogous to the physician-patient relationship than those alleged by Plaintiff in this case. *Id.* at ¶ 31. Here, Plaintiff alleges no fraud, nor does she allege the disclosure of electronic health records; instead, she relies upon conclusory assertions that her public browsing data amounts to PII/PHI. Petition at ¶¶ 1, 6-10, 100-03. When faced with virtually identical allegations, courts reject Plaintiff's generic fiduciary duty claims. *See Eisenhower*, 2024 WL 878100, at *9 (dismissing fiduciary duty claim because plaintiffs did not sufficiently allege that their information was disclosed).

Finally, Plaintiff cannot establish that the breach of fiduciary duty caused her damages. In particular, Plaintiff fails to allege how or to what extent she, her children, or any of the class members were actually or proximately harmed by Defendants' alleged disclosure of internet metadata. *See generally* Petition. Accordingly, the Court should dismiss Plaintiff's breach of fiduciary duty claim.

### G. Plaintiff Fails to State a Claim for Violation of OCPA.

To succeed in a private right of action under the OCPA, a plaintiff must establish: (1) that the defendant engaged in an unlawful practice; (2) that the challenged practice occurred in the course of the defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury. *Patterson*, 2000 OK 92, ¶ 30. Referring to a person who suffered an injury in fact as an "aggrieved consumer" it is "abundantly clear" that the OCPA "requires the consumer to show something more than a violation of the [OCPA]; instead for a viable private claim under the OCPA the consumer *must* show actual

damages as a necessary element of the claim. *Tibbetts v. Sight 'n Sound Appliance Ctrs., Inc.*, 2003 OK 72, ¶ 17, 77 P.3d 1042, 1051.

Plaintiff's OCPA claim fails because Defendants' alleged conduct falls within the exemption of the OCPA for "actions or transactions regulated under laws administered by . . . any other regulatory body or officer acting under statutory authority of this state or the United States." 15 Okla. Stat. § 754(2). The exemption applies to "actions or transactions" that are regulated under laws administered by any regulatory body acting under statutory authority of the United States. *Id.* Plaintiff's own Petition and the supporting exhibits demonstrate that the complained-of conduct falls within the statutory exemption of the OCPA. *See* Petition at ¶¶ 2, 4 (identifying "Privacy Rule" "*governing how health care providers must safeguard and protect Private Information.*") Plaintiff's Petition further relies on HIPAA and states that the Department of Health and Human Services ("HHS") issued a Bulletin under the HIPAA Privacy, Security, and Breach Notification Rules regarding the use of online tracking technology. *Id.* at ¶¶ 120-125. Indeed, Plaintiff's own allegations identify that the Federal Trade Commission ("FTC") and HHS sent a joint letter addressing concerns over the use of third-party tracking technology. *Id.* at ¶ 128. Plaintiff further acknowledges that the "FTC and HHS have *expressly* stated that conduct like Defendants' runs afoul of the FTC Act and/or the FTC's Health Breach Notification Rule." *Id*. at ¶ 132 (emphasis added). Thus, Plaintiff's own allegations (and the actions of the FTC and HHS) demonstrate that Defendants' alleged conduct is exempt from the OCPA and Plaintiff's OCPA claim should be dismissed with prejudice. 15 Okla. Stat. § 754(2).

Even if this Court were to conclude that Plaintiff's OCPA claim does not fall under the Section 754 exemption, Plaintiff's OCPA claim nevertheless fails as a matter of law. Taking the elements out of order, Plaintiff does not qualify as an "aggrieved consumer" under the OCPA.

For the reasons set forth in this motion, as well as throughout Plaintiff's own allegations, Plaintiff utterly fails to demonstrate that she has suffered actual damages. *See*, *supra*, Part IV.A, D, and F; Petition at ¶¶ 100-04. Plaintiff's threadbare, vague, and conclusory statements that she or her children suffered "damages," without more, cannot satisfy the federal pleading requirement. *Id.*

Moreover, Plaintiff fails to allege facts to plausibly suggest that Defendants' use and sale of Plaintiff's public browsing history is a deceptive trade practice. *See generally* Petition. Plaintiff alleged facts fail to show that such a practice, if one exists, amounts to an unfair or deceptive conduct. *Id.* As previously stated, courts recognize that "[u]sing an Internet search engine is now a commonplace facet of everyday living" and that "[o]ne aspect of using such technology is agreeing that certain data, including browsing history, be collected." *Williams*, 2021 WL 3612300, at *6.

Setting aside the fact that the cookie banner is plainly visible on Defendants' website, Exhibit 1, Defendants are in the business of providing healthcare to underserved children. Olson Decl. at ¶ 7. As part of this business, Defendants maintain their website to attract new patients and to serve existing patients. *Id.* at ¶ 10. As stated throughout this motion, Plaintiff has not alleged any *facts* that establish Defendants disclosed or sold any *medical* information. *See generally* Petition. Plaintiff's allegations further fail to show that Defendants' representations caused her or J.D. and A.D. any "detriment." Petition at ¶¶ 100-03. Accordingly, Plaintiff's OCPA claim should be dismissed with prejudice on this basis alone.

## V.   CONCLUSION

For the foregoing reasons, Defendants request that the Court dismiss all Plaintiff's claims with prejudice and grant all other relief to which Defendants have shown themselves entitled.

Dated: April 26, 2024                    Respectfully submitted,

/s/ *Charles H. Moody, Jr.*
Charles H. Moody, Jr. (#17237)
**RODOLF & TODD**
15 E. 5th St., 6th Floor
Tulsa, OK 74103
Telephone: (918) 295-2100
Facsimile: (918) 295-7800
cmoody@rodolftodd.com

Paul G. Karlsgodt (*pro hac vice forthcoming*)
Jonathan S. Maddalone (*pro hac vice forthcoming*)
**BAKER & HOSTETLER LLP**
1801 California Street, Ste. 4400
Denver, CO 80202
Telephone: (303) 861-0600
Facsimile:  (303)  861-7805
*pkarlsgodt@bakerlaw.com*
jmaddalone@bakerlaw.com

Lisa Houssiere (*pro hac vice forthcoming*)
**BAKER & HOSTETLER LLP**
811 Main Street, Ste. 1100
Houston, TX 77002
Telephone: (713) 751-1600
Facsimile: (713) 751-1717
*lhoussiere@bakerlaw.com*

*Counsel for Defendants Pediatric Dental Group, LLC, Pediatric Dental Group II, LLC d/b/a Pediatric Dental Group and Adventure Vision, Hero Vision of Utica, PLLC d/b/a Adventure Dental & Vision, and Hero DVO, LLC d/b/a Hero Practice Services*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 26, 2024, a copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF electronic filing system, which will then send a notification of such filing to counsel of record.

Jason B. Aamodt - jason@iaelaw.com
Matthew D. Alison - matthew@iaelaw.com


I hereby certify that on April 26, 2024, I served the same document via email on the following who are not registered participants of the ECF System:

Paul G. Karlsgodt*
**BAKER & HOSTETLER LLP**
1801 California Street, Ste. 4400
Denver, CO 80202
Telephone: (303) 861-0600
Facsimile: (303) 861-7805
*pkarlsgodt@bakerlaw.com*

Lisa Houssiere*
**BAKER & HOSTETLER LLP**
811 Main Street, Ste. 1100
Houston, TX 77002
Telephone: (713) 751-1600
Facsimile: (713) 751-1717
*lhoussiere@bakerlaw.com*

Jonathan S. Maddalone*
**BAKER & HOSTETLER LLP**
1801 California Street, Ste. 4400
Denver, CO 80202
Telephone: (303) 861-0600
Facsimile (303) 861-7805
*jmaddalone@bakerlaw.com*
*Counsel for Defendants Pediatric Dental Group, LLC, Pediatric Dental Group II, LLC d/b/a Pediatric Dental Group and Adventure Vision, Hero Vision of Utica, PLLC d/b/a Adventure Dental & Vision, and Hero DVO, LLC d/b/a Hero Practice Services*

2

Lynn A Toops*
Mary Kate Dugan*
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46205
Telephone: (317) 636 – 6481
ltoops@cohenandmalad.com
mdugan@cohenandmalad.com


J. Gerard Stranch, IV*
Andrew E. Mize*
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks. Ave., Suite 200
Nashville Tennessee 37203
Telephone: (615) 254 - 8801
Facsimile: (615) 225 - 5419
gstranch@stranchlaw.com
amize@stranchlaw.com

Samuel J. Strauss*
Raina Borelli*
**TURKE & STRAUSS, LLP**
613 Williamson St., Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775
Facsimile: (608) 509 - 4423
sam@turkestrauss.com
raina@turkestrauss.com

*Attorneys for Plaintiffs*

**pro hac vice forthcoming*

*/s/ Charles H. Moody, Jr.*

# IN THE DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF OKLAHOMA

1. JANE DOE, Individually,, and as a Mother and Next Friend of J.D. and A.D., Minors, and on behalf of all others similarly situated,

           Plaintiffs,

     v.

2. HERO SERVICES, LLC., d/b/a KIDS DENTAL VISION CARE and HERO PRACTICE SERVICES,

           Defendants.

No.: 24-cv-00177-MTS

## DECLARATION OF PAUL OLSON

I, Paul Olson, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.     I am the Chief Information Officer of Hero DVO, LLC d/b/a Hero Practice Services ("Hero").

2.     In my role as Chief Information Officer, I am responsible for Information Technology, Facilities and Construction. I am familiar with the various practices within the Hero organization and the nature of services and support Hero provides to these practices.

3.     Hero is a Delaware limited liability company with a principal place of business in Colorado.

4.     Pediatric Dental Group, LLC ("PDG") is an Oklahoma limited liability company with a principal place of business in Oklahoma.

5.     Pediatric Dental Group II, LLC ("PDG II") is an Oklahoma limited liability company with a principal place of business in Oklahoma.

6.     Hero Vision of Utica, PLLC ("Hero Utica") is a validly existing professional corporation formed in Oklahoma.

7.     PDG, PDG II, Hero Utica, and Hero provide healthcare services to underserved children.

8.     Hero functions as the practice management organization that administers the non-clinical, business aspects of practices and provides related consulting services to practices by way of an Administrative Services Agreement ("ASA").

9.     Hero manages several aspects for practices such as PDG, PDG II, and Hero Utica, including but not limited to, marketing, hiring, payroll, compliance, human resources, websites and call centers for the entities in its organization.

10.    Pursuant to the ASAs, Hero provides practices with the following marketing services: advertising, including placement of advertisements in various media; maintenance of a website with a page devoted to information regarding the practice; and assisting the practice in various forms of community and targeted outreach to make individuals aware of the practice and its services.

11.    Hero provides non-clinical support services to PDG, PDG II, and Hero Utica.

12.    All together, PDG, PDG II, and Hero Utica treat tens of thousands of patients on an annual basis.

13.    Hero does not maintain a confidential patient portal for PDG, PDG II, Hero Utica, or any practice. Confidential communications concerning an individual's protected health information occur in person or via telephone.

14.    On May 22, 2019, Hero entered into an ASA with PDG.

15.    On May 22, 2019, Hero entered into an ASA with PDG II.

16.    In 2019, Hero entered into an ASA with Hero Utica.

I declare under penalty of perjury that the foregoing is true and correct and to the best of my knowledge.

Executed in Colorado Springs, Colorado on 26 April 2024

Paul Olson, Chief Information Officer of Hero DVO, LLC d/b/a Hero Practice Services